At all. On behalf of the Appalachians, Mr. William B. Fowler. On behalf of the Appalachians, Mr. Michael Robbins. My name is Huddle, Your Honor. Your Honor, my name is William Huddle. I represent Anwar Kamal. Good morning to the panel. Counsel, excuse me. Would you mind, this is being recorded, so if you would kindly direct the microphone towards you, that would be helpful. Thanks very much. You're welcome. Again, respectfully, Judge, members of the panel, Your Honor, this comes before the court pursuant to an order of the trial court in DuPage County, entered on October 14th of 2008. The trial court at that time dismissed counts 5, 6, and 7 of the second amended complaint, which Mr. Kamal had filed in the circuit court of DuPage County. The dismissal was entered with prejudice at that time. On November 10th, 2008, the trial court heard my motion for Rule 304A finding to allow this interlocutory appeal. There were no other claims pending in the trial court at that point against Naperville Imports, the Mercedes-Benz dealer in Naperville. Excuse me. Counsel, I'd like to interrupt and turn to count 6, if I could, the breach of warranty under Magnuson Moss, please. Yes. Is it your position that this 12-month, 12,000-mile invoice language created a warranty? It is our position that the invoice is what created the warranty, although I think the trial judge thought we were referring to a manufacturer's warranty in his questions to me. So you believe, though, that this type of language creates a warranty under the Magnuson Moss Act, or are you saying it's a service contract? And can you elaborate on that and tell us how it was part of the basis of the bargain, which is a requirement, please? I can. With respect to the Magnuson Moss Act, as your Honors know, Section 23016 controls the definition of a written warranty is an affirmation of fact with an undertaking if the product fails. In the case of a written warranty such as this, it's our position that the dealership on its own, not through Mercedes, their repair invoice guaranteed to work for 12,000 miles or 12 months. And that's an obligation that they undertook. When the vehicle failed, the engine failed at 6 months and less than 2,000 miles, they refused to do any work on the vehicle. Well, that doesn't seem to make any sense, though, in a sense, because isn't this a promise to do something? This is a guarantee to back up the repairs. It's not a contract for future services or maintenance, is it? I believe that it's an obligation. It's certainly nothing. What they treated it as was nothing. We allege that it was a written warranty and an obligation that they do something when the engine failed again and started leaking. But this is not a contract for the provision of services or maintenance. It's simply a guarantee to back up work already done, isn't it? I did understand your question, Your Honor. I believe that it is, as you say, to back up the work that they had done. But they also are treating it and have treated it as, if you will, a contract and a waiver of his rights. And this is what he agreed to as the services. In their briefs, if you notice in the appellee's brief, they claim because he signed this, he agreed to all of this work, and this is the contract. Actually, the estimate that was given to him before he came and picked up the vehicle in November of 2006, that estimate was for a lot less. I was looking for the magazine. No, what I'm trying to say is that the written contract, the first agreement that they entered into, is under the Automotive Repair Act. But I believe that this invoice, when it's signed, does act as an agreement in writing. Agreement to do what? An agreement to repair the vehicle if it fails before 12 months or 12,000 miles. Any of those parts fail that they installed or the work that they did in this document. But relating to the specific repairs that have been done, it's not an agreement to do anything else in the future, is it? That's true. I agree with you, sir. Yes. To clarify, it is just for the parts that they installed to fix the PCU valves and to fix the oil leak. I agree with that. It's not a general warranty. Can I proceed? Sure, go ahead. Thank you. With respect to Count 5, I have some issues procedurally with what happened. I won't trouble the court with all the facts, but as you may have noted, the car was purchased in September. By the end of October, these problems with the vehicle occurred with the oil leaks. And Mr. Billitz specifically, we allege, represented that the car would be fixed with an upper limit of $2,925. That is the written estimate that was given, $2,925. There was only one estimate given. At the hearing on the motion to dismiss, the trial judge asked specifically of defense counsel, was there a second estimate given? And on page 50 of the record of the hearing of the motion to dismiss, the defense attorney said yes, there was a second estimate. There is no second estimate in the record. There was no second estimate attached to the motion to dismiss. This was something that was considered by the court in error, I believe. I believe that the trial court asked about a second estimate, which was outside the parameters of the motion to dismiss that was filed. There was no argument in the motion to dismiss that there was a second estimate. Was that an issue here on appeal? How does that bear on the issues we're looking at today, please? It bears on the issues because procedurally, I've alleged the trial court erred in considering things that were outside the record. Counsel made statements to the court that there was a second estimate, which would vitiate the automotive repair violation. And in doing so, there was no affidavit filed by the Mercedes-Benz dealership of Naperville indicating that they provided a second estimate. Mr. Kamal alleged repeatedly in the second amended complaint in paragraphs 7 and 9 that there was only one estimate given and that they exceeded that estimate without his consent. When the trial court asked if there was a second estimate given and counsel answered yes, we went outside the record and a factual matter was introduced into the proceedings, which I believe the judge then dismissed the case based on that. It's apparent that's the only question that he asked about the entire thing as far as count five. So it's our position that under Rule 265, 2615, or 2619, and as Justice O'Malley has commented in the Oldendorf case, a 2615 motion only attacks the legal sufficiency of the pleadings and is within the four corners of the document. Under 2619, there was no affidavit attached, and the case law is legion, that you can't go into other matters. And I've cited those cases. Franz and Peters is one of them. There's all kinds of them. The Bank of Northern Illinois case versus Nugent. They all say that you can't consider this a motion to dismiss. In addition to which, we have factual arguments that were made on count six and seven. The defense counsel argued that, factually, the repair that was done initially by Naperville on Mercedes Benz was not the same repair that was done over at Naperville and Westmont. It seems to be one of the things Naperville is hanging its head on, is arguing that since the repair in Westmont was done five months and 1,700 miles after Naperville's repair, the oil leak must have been fixed. So what's your reaction to that, legally and logically speaking? Okay. Legally, it's irrelevant because it must have been fixed is a fact question. Kamau alleged it wasn't fixed. The car continued to leak oil. Logically, it doesn't hold water because their guarantee was for 12 months and 12,000 miles. And the counsel obviously thought it was 1,200 miles because that was the argument she made to the trial court. I don't know if the trial court was misled by that or not, but the fact is it was guaranteed for 12,000 miles and he only drove it two. The fact is it's still a fact question that the court should not have been engaging in and asking about. I think the trial judge was dead wrong in asking about that and this being a factual issue that the court was considering on a motion to dismiss. There certainly was no affidavit of mechanic saying that the repair by them was not related to the oil leak that continued in April when he took it to Westmont. Naperville, I mean Westmont Mercedes-Benz dealership. You're saying the mere fact that a number of months have passed would not be definitive resolution because it's reasonable to infer someone, as people commonly do, continue to drive their vehicles even though there's an oil leak, right? And that's exactly what Mr. Kamau's testimony will be, that he continued to drive the vehicle even though it was continuing to leak oil and the Naperville dealership did nothing. He alleges that it was an illusory repair. They even told him it didn't fix the oil leak and he alleges that in count five. He alleges it again in count six and seven. What they did is they fixed the PCU valves which didn't fix the problem. The car had a valve problem and a head cover problem which cost $8,000 when it all was said and done. They totally misdiagnosed the car. They didn't repair it and he ended up paying $12,000 instead of the $8,000 he should have paid. Now you conclude though, I think, that in your complaint you allege that Naperville actually knew that it couldn't repair the oil leak for the estimated amount of $29.25. I do. What other factual allegations are there that you have given to support that conclusion? Conclusory allegations are not sufficient, correct? Oh, I would agree with Your Honor. Conclusory allegations are not sufficient. I allege a number of different facts in counts five and six that show they knew they couldn't fix the vehicle for the number of hours or the type of repair that they did. Can you point to any of them or recall any of them to point out to us? I can, Your Honor. Thank you. If the court would turn to count five of the complaint. That's attached to your brief. It's attached to the appellant's brief, I believe. In paragraph 7A, Your Honors, on page 18 of the Second Amendment complaint, the plaintiff alleges the representations and failures to disclose the promises were false or untrue. I don't want to just read this because I know you don't like people reading. But we allege that they billed the plaintiff this amount of demanded payment without his consent, knowing the repair work performed did not correct the problem. We go on to say that when he eventually took the vehicle elsewhere, it cost them $8,000 more to have the vehicle actually repaired. And then I've attached to the complaint the invoice from Mercedes-Benz of Westmont, where you will see the actual need. What was actually needed were gaskets, an oil cooler, an oil separator. You also see there there's a cylinder head, which is a very expensive part, $500. And you'll see other parts that were necessary. He alleges that it was an illusory repair in the sense that this was a Mercedes-Benz dealership. They should have known exactly what was going on with this engine because they were all trained in fixing Mercedes dealerships. So specifically, we allege that they knew about Mercedes engines and knowing the type of problems that he had, they induced him into starting the repair there to lowball him and lure him in. Now, that goes to the deception. That goes to the deception in the Montgomery case that I argued before, Your Honors, a year ago, Montgomery versus Nostalgia Lane. And we say that it's a consumer fraud because it's deceptive and a false promise. In paragraph 9, I allege that the defendant's lowball estimate was knowingly to induce the plans to engage to commence engine repairs when he knew the engine could not be repaired for that amount. So they lured him in with a $2,900 estimate, then without even telling him that they had exceeded that by going up to $4,100. When he got there and was told he had to pay $4,100, it then became apparent that they were telling him, and by the way, we didn't fix your engine. If you want to really fix it, it's going to cost you another $8,000. Well, Mr. Kamal was angry at that point, and as his allegations allege, he said, you know, why didn't you tell me that up front? Why am I paying $4,000 for an illusory repair? You didn't do anything to help my car. So he took it down to Westmont, and they actually fixed his engine. It cost $8,000.  But it's just a summary. I believe that if the court doesn't find there's a fraud here, which I think there is under the Automotive Repair Identity Consumer Fraud Act, there certainly is a breach of contract. And the court actually decided fix on this motion to dismiss, which was improper. All right. Well, we can address the breach of contract when you come back. Thank you. Thank you. Thank you. Counsel. May it please the court, counsel. My name is Michael Rackless. I represent the appellee Naperville Imports Mercedes-Benz of Naperville. I'm going to pick up on the ICFA issues that had been discussed at the tail end and some questions that were asked. We believe that the trial court should be affirmed on all counts that it dismissed, 5, 6, and 7. This deals with count 5. And there are three reasons, at least three reasons, why the ICFA count should be dismissed, was appropriately dismissed. I'm going to go with my last one, I guess, first. And that's to say that no ICFA claim exists here because this is an effort to take a contract claim and convert it into something, a fraud claim, essentially to get a fee provision within that claim. And you heard evidence of that precisely through the argument that Mr. Huddle had provided. Namely, the complaint that they are making is that the repairs weren't done in a way that was satisfactory. That's essentially it. And I think I'll address it up in some other points. But the bottom line of it is that there was a failure to perform of the dealership allegedly. And that contractual claim can't be converted into an ICFA claim. This court and other courts have dealt with that. This court specifically in the Zankel decision, which we cited in our brief. Counselor, I don't disagree about that. They're not. But they say there's more. They say that it was knowing and it was false and it was an inducement to $2,900. They don't disagree with what you just said so far. They say that when they gave him this estimate of $2,900, they knew that was false. And he wants us to infer that by the fact that there are professionals in this field and they would know what eventually became clear to everybody is that this court's allegations, it did cost a lot more and that they knew. That would be the difference, right? If they knew that the $2,900 wasn't going to do the job, that would allow it to convert. Well, it may make a difference if they actually exceeded the estimate, right? I mean, it would have to have damage in that regard, which is presumed here. Let me go to the exhibits. Well, I just want to clarify that if, in fact, they can establish or plead with sufficient factual allegations that at the time the $2,900 estimate was given, it was known by the person giving it that it wasn't going to work. That would move it from breach of contract under the Act. If you look at nothing else, it's possible that could convert it under the Act. But I don't think that that's our case here at all. I didn't think you did, but this gives us some guidelines. Go ahead. Why is it that I want you to? Well, if you look at Exhibit B to their complaints, and this maybe is a good time to address the points about the arguments made to counsel or the items that the judge had asked about,  and we would certainly agree that a 2615 motion appropriately looks at the questions that are attached to the complaint, the allegations of the complaint, and the attachments to the complaint, which I think are here very instructive, and the Court properly looked at those in order to dismiss this cause of action and the others. Exhibit E is the estimate, and it's important. Look, it says the word estimate right on there. That cannot be ignored. And, indeed, the Sampson case talks about in dismissing an ICFA claim where the word estimate is used, an estimate is the equivalent of an opinion, and an opinion and an estimate cannot be the predicate for a fraud claim. Counsel, which count are you addressing now? ICFA. I'm still doing this. You haven't reached a count yet. No, no, I'm just doing it. Count five. Count five, correct. Okay. All right. You were just saying that an estimate can never be the basis for the fraud? Well, an estimate or an opinion, the equivalent of an opinion, cannot be the basis. I think the law is pretty clear that that can't be the basis for a fraud claim because an estimate is equal to an opinion, and an opinion can't be the predicate for a fraud claim. Sue with me for a minute that they have unequivocal proof from, let's say, an admission by the person who gave the estimate. When I gave this document labeled estimate, I knew that that was wrong, and I did it for the purpose of bringing this guy in. That might be, Your Honor, in that scenario, which is not the case here. Well, we don't know what the case is here, though, because we don't know what his proof would be. We have to deal with the allegations. So he's alleged that they knew. The question is, I mean, I think an estimate could, under those circumstances. I'm not suggesting, but he doesn't have to plead that yet. He does not. He does not. And when you tell us we don't have that situation here, we don't know if we have it. No, I actually disagree, and here's why. Okay. The estimate provides, as attached to their complaint, for a 2925 amount for dealing with the PCV system. That's the only item that's listed. When you read the estimate that they've attached, that's what that is for. When you look at Exhibit F, Exhibit F deals with the PCV system, that's the repair order, along with a host of other repairs that were performed to get to a total of $4,000. They are basically telling the court that everything is related to that estimate that is in Exhibit F, when it's not. There's indeed repair orders for an engine wire harness, totally separate from that, that's $1,500. That minus $4,000 is $2,500. In other words, the reason that the ICFA claim fails is because the charges that were made did not exceed the estimate, as attached to their complaint. As long as they didn't exceed the estimate. You agree the facts are Kamal brings the car in, he's given an estimate, and was there not an acknowledgment by the service manager that he was going to call him if the repairs actually exceeded the original estimate, and it turned out it did exceed the original estimate. He shows up not knowing that the repairs are going to be well in excess of the estimate, correct? No, that's actually not accurate. What they've pled is that there was an estimate that was provided for the PCV system. That's what they have said. That's the estimate that was provided. There's a repair order that's attached to that that deals with the PCV system and a host of other things, but yet they claim to your honors and to the trial court that the PCV system, the estimate, is the same as the repair order, which it's not. The estimate deals with one item, the PCV system. If you look at exhibit F, which deals with a host of other repairs. Did somebody call him and tell him that there was other work that was necessitated? Well, you're right. Does he just show up and get this bill, and you're saying, oh, there was some additional problems that we found? No, they have pled that the PCV system, this is their claim, and we're working with that. There is a repair order here that says that he consents to and acknowledges that all the repairs were done with his approval. Yeah, but he's showing up and what is he going to do? He can't get his car back. No, that's not true, your honor, at all. Oh, really? Not at all. There's lots of different options that you have. You don't have to pay the bill. That's not pled. I mean, I know the practical matter. I understand what your honor is saying, but that is not what's been pled. What's been pled here is that there's an estimate that was given for a PCV system, and then there's an Exhibit F that deals with something beyond that. And that's not the only time that that occurs in this situation. The breach of contract claim, for example, that deals with Exhibit G, that's the second work that's done on this car, several months later and several thousand miles later. Those two, on the one hand, it's easy to say, and as pled, that, oh, the repairs are for an oil leak, and therefore they're exactly the same as they were for the oil leak that was provided by my client. The problem, however, is that Exhibit G doesn't say that. Well, let's back up a little bit. You're glossing over, I think, a very significant fact here. I don't mean to, your honor. Isn't it true that immediately or shortly after Mr. Kamau retrieved his vehicle, the vehicle began leaking oil again? Well, it's actually, well, it is pled that there was oil leaking again. That does not necessarily mean that that was part of the repair that was done on the PCV system. I understand that. I am contesting he then indicated that he returned to Naperville, requested repair of the engine, and Naperville refused to honor the invoice, in which case repair of the engine would result in additional costs of thousands of dollars. So you can characterize it however you want, different estimates. Let's go to the real world. Somebody goes to a dealership. Their car is leaking oil. They go in and spend $4,000. The car then continues to leak oil. What is a person supposed to do under those circumstances? They certainly can do, obviously, one of many things. They can go back to the dealership, as you've indicated. The dealership can go ahead and say that is work that we have done, can repair that. The dealership can say it's not related, it's something else, which is exactly what happened here, and that would cost additional amounts. You can go to a different dealership, get another view on that. That's all true. But your honor makes a good point in the sense that this is nothing more than a breach of contract situation. At best. That should count on that. Yeah, that's right. You're dealing with count seven. That is precisely the problem, I would suggest, with the fraud claim. At its core, they're taking, I think, selective pleadings, if you will, which are contradicted by their own exhibits, ultimately basically trying to make that into an ICFA claim because of the- You're saying at most it would be a breach of contract, not a fraud. At most. At most, that is right. They're not conceding that- Get up here and concede as an adversary that there is a breach of contract. You lose. We don't expect you to do that. You're absolutely right about that. Let me go to the breach of warranty claim. Before you do, I just want to clarify. The point was if the $2,900 was known by the person who said it to be false, we more or less agree there's a far-off scenario where that would be sufficient to justify fraud, possibly. But they don't allege something. What they're alleging is that this additional unrelated repairs are evidenced by the way we can infer that the $2,900 was known to be false. But I wasn't sure they were confining it to that because ultimately they took it someplace else and repaired it for a great deal more money. And, in fact, when they brought it back to your client, they said it was going to cost a great deal more money to repair it. Now, whether it's related or not to the original problem, the PCV, which is on a different document, a different exhibit, that would seem to be a factual question hashed out by the candidate. I would suggest in this scenario, while the theoretical issues your Honor suggests may be appropriate under some context, I would suggest here the estimate and his own written approval on the repair order and the fact that the amounts that were charged were less than the estimate ultimately, and you total it up given everything else that was out there, cannot provide the basis for an IFLA claim in this context. It can provide, as Justice Hudson suggests, something for breach of county to do the right repair or something to that effect. I don't believe that this is an IFLA claim, and it's certainly not a breach of Magnuson Moss. There's no case in Illinois that says that a repair order is to act as a warranty or a service contract. Now, we looked and we cited a Florida case that deals directly with this question of whether a repair order can be a warranty. And in that case, the repair order at issue had a phrase saying that we guarantee our work for 6,000 miles or six months. The court there, addressing an argument just like the one here, said that cannot be a warranty under Magnuson Moss, citing both of the federal regulations underlying Magnuson Moss, and just the common sense approach that this is simply a guarantee of the work that was performed before. That's all that it is. There's nothing more that can be stretched out from that. One other point on Montgomery that had come up as well. Montgomery deals with a situation far different from the one here. In that case, the courts and the allegations involved pattern and practice, a knowing pattern and practice of deceptive conduct, if you will. And that is not the scenario here. Here you have a single repair that's ongoing. And they have to tie their IFCA claim, I should say, to this error. That's what they're doing. They're tying their IFCA claim to error. And if you look at the error statute, it provides, Section 85, that whenever an automotive repair facility is knowingly engaged, you have to have that, and that knowing persistent practice or pattern of conduct shall be deemed an unlawful act under the Consumer Fraud and Deceptive Practices Act. Montgomery, for a 16-month period or so, had these biweekly payments that were ongoing, a gross, and I believe the court used the word, grossly overstated or understated, I should say, estimate on the repairs that were at issue in that case. They were involved in total breakdown of a car and then its rehabilitation. Very, very different scenarios than in this case. I would also suggest that the court there did not address the question of standing, which we had raised simply because under error, you have within Section 85 of the statute, it says in the case of such a knowing persistent practice or pattern, not a single episode, it says that the attorney general under the Consumer Fraud Act has the rights available to it to enforce it. Well, counsel, what about Section 10A that says any person who suffers actual damage as a result of a violation of this act committed by any other person may bring an action against such person? Is there not standing under 10A? There is an inconsistency. I'm not going to deny that. That's for certain. The problem, however, is you don't have to reach that question here because we have a single, you have at most what would be not a pattern in practice, but you have a single episode, if you will. So you don't have the trigger of a knowing persistent practice or pattern of conduct. So you're saying as a matter of law that a single incident could not bring you within the purview of the statute. Is that what you're saying? I'm saying that the statute says that. I'm saying that the statute explicitly says that. One other point. I'm sorry. Let me just clarify that. You're talking about what about unfair conduct? And we look to the Federal Trade Commission and the factors that they've talked about. I mean, why wouldn't it come under an unfair practice? There you don't need to show all of the three factors. If that is true, yes. I'm not suggesting. No, I'm not saying. But I'm saying they're tying it to Eric. They're the ones who are tying it to Montgomery and tying it to the Automotive Repair Act. And I'm suggesting to you that really that's not an appropriate tie, whether it be through Montgomery, whether it be by looking at the statute. There's a case from the Fourth District, the Jandeska case, which we cited in our brief, which basically found there was no private right of action under ERA for purposes of creating a retaliatory discharge type of claim. So where courts, and there's another case, Kunkel, which is not from this district as well, that basically recognized that there is an inconsistency between ERA and having a provision like this that says the AG is the only one supposed to have the right of action and the Consumer Fraud Act. But they did not resolve it. They didn't feel the need to resolve it in that case. So I'm cognizant of that. Thank you, counsel. Thank you very much, Your Honors. Thank you, Your Honor. Mr. Hutton. Good morning again. In all due respect to Mr. Radcliffe's arguments, the Montgomery case does not reference Section 85 at all in the opinion of the ERA Automotive Repair Act. That section is never mentioned in the opinion. And indeed, at the end of the opinion, the court reverses the summary judgment granted for the automotive repair facility in that case and says there is an action for unfair act for luring him in and deceiving him with a lowball estimate. And it says estimate. The estimate was the basis for the lowball, if you will, deception, which the court held. They reversed it. He has an action, which is now pending, by the way, before the Rockford court for trial in two weeks, the end of November. So the trigger by one act is enough. I've cited the Duran case in our brief, which Mr. Lear argued before this court. And there are other cases that say one act that causes financial damage, as Your Honor pointed out, under Section 10A, is sufficient for a party to have standing under ICFA. It is true that without damage, an individual cannot bring an action for injunction. Only the attorney general or the ASA can bring that, the assistant state's attorney or the state's attorney's office. But we're not asking for an injunction. We have standing to seek private damages as one individual alleging one act of violation. And so it's clear our count, count five, is not a count brought under the Automotive Repair Act. It's brought under the Illinois Consumer Fraud Act, and we've alleged certain violations of the ARA as part of that. As Your Honor indicated, the FTC factors are clear that we can do that. In the Robinson case, the Illinois Supreme Court said you can allege violations of public policy to allege unfair acts, and that's what we've done. There's a series of violations of the public policy in ARA by the Naperville Mercedes-Benz dealership. Yes, sir. Earlier we were discussing, in response to one of my colleagues, the question of this language that appeared in the document that says 12,000, guaranteed for 12,000 miles for 12 months. That language becomes when? When is that document handed to the client? It's handed to him exactly on November 22nd, 2006. I don't know so much about the date. Is it before or after the car was serviced by the defendants? They've already serviced it. All right, so if he gets this language handed to him after the work has been done, properly or not, how could that have been part of the basis? We have to get ahead of him. It's a great question. The fact is he hasn't paid for the work yet, so he enters into the contract, and there's consideration for the promise. He's going to pay them, and as Mr. Radcliffe said, he could have walked away and not paid and just gone to court and sued, but he decided to enter into the contract with the Naperville Mercedes-Benz dealership. So you're saying the contract's entered into? Okay, I see. Right. He gives them the check. That's the consideration, $4,100 based on the $2,900 estimate. So you're saying there's a second contract then when the work is completed? Is that what you're saying? That's where the written warranty is entered into. It's a written warranty agreement. He pays consideration for it. They give him a written document. He's paying for that guarantee, or is he paying for the repairs that were done? I say they run together, much as the car that you buy includes the warranty that you buy with it. Well, but that's a different scenario. It is a different scenario. Now, buying a new car from a dealership, that's a different situation than we have here. He's buying parts from a dealership here. He's buying PCU valves. He's buying parts that they've installed in the car. And as Justice Hudson pointed out, the warranty is on those parts. They say the parts and labor are guaranteed for 12 months, 12,000 miles. That's what I said, but before you read something into my earlier comment. I didn't mean to read anything in that you didn't intend. According to the Act, which is what we have to go by, a service contract under the Act means a contract in writing to perform over a fixed period of time or a specified duration services, quote-unquote, relating to the maintenance or repair of a consumer product. Is there not a difference between guaranteeing work already done and a contract to perform services in the future? That's part one of my question. Part two is you cite the Lysak case. In Lysak, that was an agreement to do specified repair or maintenance services. That's not what Naperville did here. We're going to back up the work we've already done. How is that a service contract to perform services in the future unrelated to the repairs? Okay. It's a very good question, Judge. Can you answer that in 10 seconds? No, you have more than 10 seconds. I guess we'd like to hear the answer, please. Sure. It is true the Lysak case in the 2nd District considered Judge Webster's dismissal of the Elmhurst Dodge dealership. In that case, we argued, and successfully, that the Magnuson-Lysak does cover service contracts because, first of all, they're expressly referenced and defined in the act. Number two, the dealership in that case did give a service contract to the buyer, Lysak. Elizabeth was someone who bargained for and obtained promises from the dealership. Admittedly, they were more broad, and they went beyond the work that was actually done at that time. It was to do anything that went wrong with the vehicle at a later time. Well, and certainly that would be a broader service contract. But we're saying within the parameters, and what's really interesting about this is if you look at the motion to dismiss, the motion to dismiss actually, in attacking this as a written warrant, he says it is a service contract. So I would ask the court to take a look at that as your rule on this case because I believe it's got to be some kind of an obligation. You can't put that on there and then in a small little disclaimer next to it say, we don't owe you anything if anything goes wrong with the parts and labor we guaranteed. I brought the definition of guarantee here, but I'm sure you all would agree with me that it is at least an assurance. They're going to do something about the engine oil leak that they charged $4,000 to repair, and they did nothing is our allegation. We would ask that the court reverse the dismissal with prejudice of all of these counts and minimally give us leave to amend if your honors find that there is something lacking in the complaint. And I appreciate your time this morning. Thank you, counsel. Thank you.